**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES,**<br><br>**v.**<br><br>**MOISES HUMBERTO RIVERA-LUNA,**<br><br>*Defendant.* | **Case No. 1:10-cr-256-RCL** |

## MEMORANDUM OPINION

Upon consideration of the Government's Motion in Limine to Admit Documents from El Salvador, ECF No. 850, Defendant Rivera-Luna's opposition, ECF No. 855, the Government's reply, ECF No. 859, and the exhibits thereto, the Court will deny the Government's motion without prejudice towards refiling for the reasons stated below.

## I. BACKGROUND

Defendant Rivera-Luna is charged with one count of conspiracy to engage in racketeering activity through his involvement in MS-13 between 2008 and 2010. The Government, through its motion in limine, petitions to admit two documents from El Salvador at trial along with their English translations: (1) jail visitation records obtained from the Salvadoran Ministry of Justice and Public Security, *see* ECF No. 850-1, 850-2; and (2) a 'data sheet' that includes a photo of defendant Rivera-Luna alongside purported biological information, family information, criminal associations and a criminal record, *see* ECF No. 850-3, 850-4. The Government purports both documents are relevant to the disputed question of whether Rivera-Luna is the person referred to in the Normandie clique as "Viejo Santos." *See* ECF No. 805 at 1. The visitation records are accompanied by a signed letter (which the Government does not intend to introduce) from the Salvadoran Head of the Penitentiary Record and Oversight Unit indicating that the information was "received from various prisons" and "broken down in the attached table" for "applicable legal

and administrative purposes" as well as an apostille certifying the authenticity of the signature. *See* Ex. 1 to ECF No. 850 at 1-3. The data sheet does not have any such certification of authenticity, but the Government states that they expect "that testimony at trial will show that this document was created by staff working with" their witness "after he met with defendant Rivera-Luna." *See* ECF No. 850 at 8. The Government seeks to admit the visitation logs under Rule 803(8) as agency records and the data sheet under Rule 801(d)(1)(C) as a statement of identification. Defendant Rivera-Luna opposes the admission of both documents on the grounds that the visitation log (i) was not made under a legal duty to report, (ii) was retrospectively compiled, (iii) is generally untrustworthy, (iv) violates the confrontation clause, and (v) is inadmissible under Rules 401 and 403, and on the grounds that the data sheet (i) has unclear provenance, (ii) contains more than just neutral identifiers, (iii) contains inadmissible hearsay, (iv) is a law enforcement record, (v) is unreliable, and (vi) fails Rule 403's balancing test. *See* ECF No. 855.

The Government previously sought to admit the visitation records under Rule 807's residual hearsay exception during Defendant's first trial. *See* ECF No. 775. At that time, the Court found that the records were inadmissible under Rule 807 as they were not the "most probative evidence available to the prosecution through reasonable efforts." *See* ECF No. 783. The Court did not, however, assess these records under Rule 803(8), as the Government had not argued for admission under that rule.

## II. ANALYSIS

### A. Visitation Records

The Court begins with the visitation records. The Court is satisfied that these records are relevant for the purpose of establishing Defendant Rivera-Luna's identity as Viejo Santos, as the logs' entries, together with the Government's proffered testimony about payments being sent to Viejo Santos by these same visitors, ECF No. 850 at 2, tend to make this connection more probable

than it otherwise would be, and because the fact of identity is central to the case. Fed. R. Evid. 401. The Court thus moves to the records' authenticity.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Certain "items of evidence are self-authenticating," meaning "they require no extrinsic evidence of authenticity." *Id.* 902. Such documents include foreign public documents "signed or attested by a person who is authorized by a foreign country's law to do so," and "accompanied by a final certification that certifies the genuineness of the signature and official position of the signer or attester." *Id.* 902(3). Foreign documents may also self-authenticate under ratified treaties with other nations through Fed. R. Civ. P. 44(a)(2) (allowing authorization "by a certification under a treaty or convention to which the United States and the country where the record is located are parties"), which is adopted in criminal cases by Fed. R. Crim. P. 27.

The Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents, which was ratified by the Senate in 1979, S. Rep. No. 17, 1979, 96th Cong., 1st Sess., allows for authentication through an apostille when the documents were exchanged between countries that are parties to the Hague Convention. *United States v. Pintado-Isiordia*, 448 F.3d 1155, 1157 (9th Cir. 2006). The visitation logs here contain an apostille for the signature certifying their provenance, and both the United States and El Salvador, the exchanging countries, are Hague signatories. Thus, the visitation logs are self-authenticating, and no further Salvadoran certification is needed. *See id.* at 1157 (recognizing that "[t]he Government was not required to submit a 'final certification'" because the documents in question "were certified by an Apostille in accordance with the Hague Convention. . . .").

Having established the self-authenticating nature of the visitation logs, the Court now turns to the question of hearsay. The Government contends that these visitor records are admissible as public records under either Fed. R. Evid. 803(8)(A)(i) or Fed. R. Evid. 803(8)(A)(ii). In relevant part, Fed. R. Evid. 803(8) states that a "record or statement of a public office" is not excluded by the rule against hearsay, regardless of the declarant's availability, if "it sets out: (i) the office's activities" or "(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel" so long as "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." In response, Rivera-Luna devotes the relevant portion of his brief to arguing against the existence of a legal duty under 803(8)(A)(ii), the retrospective nature of the records, and the untrustworthiness of the document, and offers no specific arguments against the applicability of 803(8)(A)(i).

The Court begins with admissibility under 803(8)(A)(i). Courts have admitted records under Fed. R. Evid. 803(8)(A)(i) when they are found to contain a "routine activity" of an office, even if the underlying information recorded concerns the behavior or status of non-officials. *United States v. Romero*, 32 F.3d 641, 650 (1st Cir. 1994) (admitting a State Department certification that a vessel was stateless as a public record despite certifier lacking personal knowledge); *see also United States v. Mena*, 863 F.2d 1522, 1531 (11th Cir. 1989) (admitting a Honduran vessel registration, as registration was a "regular activity" of the Honduran government); *United States v. Anguiano*, No. CR 89–093–TUC–WDB, 1991 WL 27450, 3 (9th Cir. March 5, 1991) (admitting a vehicle's registration slip and receipt as registration was "a routine, non-adversarial activity" of the DMV and permitting was a "routine function" of border patrol).

The Court here is satisfied that recording an inmate's visitors is a routine activity of the Salvadoran prisons, and that the resulting visitation records produced from this activity would be admissible public records under Fed. R. Evid. 803(8)(A)(i), just as vehicle registration records are a public record of a motor vehicle office's routine activity of registering vehicles. Under Salvadoran law, only certain people are allowed to visit inmates, and prison authorities are to provide a form to register visitors and an approved visitor list for each inmate. *See* ECF No. 850-5 (providing an English translation of Art. 14-A of El Salvador's penitentiary law). There would be no way to monitor compliance with this law if Salvadoran prisons did not routinely record an inmate's visitors.

While, as Rivera-Luna points out, the Government has no first-hand testimony as to the circumstances of each entry's creation, such supplementary information would not be necessary to find these documents to be public records under 803(8). And, despite Rivera-Luna's argument otherwise, the mere fact that data was compiled in response to a law enforcement request does not make the compilation any less of a public record or make it unreliable so long as the information was *recorded* routinely. *See United States v. Puente*, 826 F.2d 1415, 1418 (5th Cir. 1987) ("The relevant inquiry under Rule 803(8) is whether the information was *recorded* by a public official as part of a routine procedure in a non-adversarial setting. . . . There is no reason to believe that because this information was later retrieved in connection with litigation, it is less reliable than when first recorded.").

The Court's analysis under Fed. R. Evid. 803(8)(A)(ii) proceeds similarly. Although the phrase "legal duty to report" in 803(8)(A)(ii) on its face suggests the necessity of a clear statutory mandate, courts have routinely found it to be sufficient if the creation of the document at issue was simply the kind of record an agency "would be expected to create and maintain in

the course of carrying out its duties." *United States v. Fryberg*, 854 F.3d 1126, 1131 (9th Cir. 2017) ("The pertinent question is whether the creation and maintenance of the record at issue is 'appropriate to the function of the' relevant government office, given 'the nature of the responsibilities assigned to' that office" (quoting *United States v. Lopez*, 762 F.3d 852, 862 (9th Cir. 2014)).). The Court finds that visitation records are the kind of record a Salvadoran prison would expect to create and maintain in the course of carrying out its duties, particularly given the above-cited Salvadoran law regarding the maintenance of approved visitor lists. ECF No. 850-5.

The Court is therefore satisfied that if the records the Government seeks to admit here are indeed found to be routinely-recorded visitation records, or later-collected copies, print-outs, or simple retrievals of such, they would fall within the public records hearsay exception under either Fed. R. Evid. 803(8)(A)(i) or (ii). This is, however, not evident from the provided record, even after authentication.

The document, as authenticated, appears to have been made from existing data by the public official after a request by an attaché regarding specific named prisoners including Rivera-Luna. ECF No. 850-2 ("Based on information received from various prisons, I have the pleasure of providing the requested information that is broken down in the attached table."). Without any further information from the Government, the Court is *not* satisfied that the public official's creation of this table has not transformed the visitor records so much as to create a *new record* entirely. *See United States v. Ekiyor*, 90 F. Supp. 3d 735, 741-43 (E.D. Mich. 2015) (addressing this problem in the business record context). The certifying official's statement referencing the creation of the table could mean she performed anything from a routine copy and paste of one prison's computerized records to a full hand-assembled summary of multiple records kept in wholly different formats, across separate prisons, or originally containing information omitted

here. *United States v. Puente*, which the Government cites to argue that the logs are admissible in their provided format despite not being in their original form, only dealt with the simple retrieval of earlier-recorded data from a computerized system—not the transformation of such data into a new record entirely after a targeted inquiry, which could predictably affect reliability in a way a retrieved record would not, thus undermining the foundation of the public record exception. *See Puente*, 826 F.2d at 1417 (specifically detailing the generation of the computer printouts at issue).

Even if this document was found to be a public record by the court, this underlying issue of the official's transformation of the visitor logs is replicated in the Court's Confrontation Clause analysis. As the Government rightfully cites, public records are "generally admissible absent confrontation . . . because—having been created for the administration of the entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). This does not mean, however, that all public records are by nature non-testimonial. *Id.* at 321.

The Supreme Court drew a line in *Melendez-Diaz* between new records created as a result of a targeted investigation and existing records simply pulled in response to such an investigation by explaining that, to avoid a testimonial hearsay issue in a public record, "a clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Id.* at 322-23. Lower courts have followed this line, finding certifications that no copy of a public record exists to be new, testimonial records when prepared in an investigation, *see e.g. United States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010); *Tabaka v. District of Columbia*, 976 A.2d 173, 175–76 (D.C. 2009); while admitting similar certifications simply authenticating existing records, including foreign public records, as nontestimonial. *United States v. Anekwu*, 695

F.3d 967, 974 (9th Cir. 2012); *United States v. Yeley-Davis*, 632 F.3d 673, 680 (10th Cir.) (noting the Supreme Court's distinction "between an affidavit created to provide evidence against a defendant and an affidavit created to authenticate an admissible record").

The Ninth Circuit's decision in *United States v. Bustamante* is particularly instructive in navigating this divide. 687 F.3d 1190 (9th Cir. 2012). At issue in *Bustamante* was a document purported to be a "copy" of Bustamante's birth certificate, which stated that it was provided "to certify" the office's birth records, but instead wholly transcribed the information on those records in response to an Air Force investigation into Bustamente's citizenship. *Id.* at 1192. The Ninth Circuit held that the document was a testimonial statement and that its admission violated the Confrontation Clause, recognizing that while "birth certificates, and official duplicates of them, are ordinary public records," and while this was "labeled a copy of the certificate," this was actually a testimonial affidavit because the officer:

> [H]a[d] gone to the birth records of the City of Bacolod, looked up the information on Napoleon Bustamante, and summarized that information at the request of the U.S. government for the purpose of its investigation into Bustamante's citizenship. Rather than simply authenticating an existing non-testimonial record, [the officer] created a new record for the purpose of providing evidence against Bustamante.

*Id.* at 1194.

Whether the provided Exhibit here is a new or existing record is a particularly difficult line to draw where, as in here, it is unclear how exactly the official compiled the resulting table, and where the Court has, moreover, already had to infer the circumstances of the original data collection. As noted above, the certifying official's statement about the table could encompass anything from a routine copy and paste of one prison's computerized records to a full reworking similar to that in *Bustamante*. Accordingly, *on the provided record* the Court finds itself unable to

conclude whether the official did indeed add her own analysis to the public record and thus create a new record and a new testimonial hearsay problem.

The party seeking to admit evidence in a pretrial motion in limine bears the burden to establish that evidence's relevance and admissibility. *Corrigan v. Glover*, 254 F. Supp. 3d. 184, 191 (D.D.C. 2017).] Because of the above remaining questions regarding the circumstances under which the official compiled the table at issue here, the Government has not met its burden of proving admissibility. Even if the Court found the records admissible as public records, or even under another hearsay exception, the Government has not yet shown that the table of Rivera-Luna's visitation records was compiled in such a routine manner that it did not create a new record and resulting testimonial hearsay. The Court accordingly will deny the Government's motion in limine seeking admission of the visitor logs without prejudice.

The Government remains free to seek to introduce the same visitor logs with additional information provided to the Court about the extent of the official's transformation of the records into the table, (for example an affidavit from the official stating that there was no alteration from the original form of the records, or other evidence demonstrating to the Court that this is how such records are maintained in El Salvador, and that the alteration was therefore nonexistent). Alternatively, the Government remains free to seek to introduce new logs that are simply mere printouts or retrievals of an existing visitation record. The Court is satisfied that either route would cure the above-mentioned defects with hearsay and the Confrontation Clause.

B. Data Sheet

The Court now transitions to the admissibility of the document the parties refer to as a data sheet. As stated above, this data sheet contains a photograph alongside purported biographical information, family information, criminal associations, and a criminal record for Defendant Rivera-Luna. The sheet also, importantly, lists the alias "Santos." The Government seeks to admit

this data sheet under Fed. R. Evid. 801(d)(1)(C), as a declarant-witness's prior statement of identification.[1]

Fed. R. Evid. 801(d)(1)(C) states that a statement is not hearsay when a declarant testifies and is subject to cross-examination and the statement "identifies a person as someone the declarant perceived earlier." Fed. R. Evid. 801(d)(1)(C). This hearsay exception is most commonly used to admit statements made in formal identification procedures, such as line-ups. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 30B FEDERAL PRACTICE AND PROCEDURE § 6763 (2026 ed.). The Government asserts here not that any formal identification procedure occurred, but instead that the sheet qualifies a prior statement of identification because "testimony at trial will show that this document was created by staff working with" the Government's witness "after he met with defendant Rivera-Luna." ECF No. 850 at 8.

The D.C. Circuit has in the past appeared to have taken a somewhat expansive view of Fed. R. Evid. 801(d)(1)(C), allowing its use outside of the formal identification-procedure context for buy reports, *United States v. Davis*, 181 F.3d 147, 149 (D.C. Cir. 1999), tapes undercover officers made from a body recorder, *United States v. Clarke*, 24 F.3d 257, 267 (D.C. Cir. 1994), and descriptive notes taken of a suspect after a stop, *United States v. Coleman*, 631 F.2d 908, 913 (D.C. Cir. 1980). In each of these unconventional uses, however, there were strong indicia of reliability of the identifications, as they were made by the declarant-witness, in close temporal proximity (or simultaneously) to the perception of the individual by the declarant and the circumstances of their creation were known, allowing the court to decide that they were in fact statements of *identification*

---

[1] The Government has additionally stated that "[d]epending on how the testimony unfolds, [the data sheet] could also qualify as a recorded recollection under Fed. R. Evid. 803(5)." ECF No.859 at 7. As the Government has provided no further information on this point, and this explicitly relies on hypothetical future testimony, this does not change the Court's decision today.

despite not being created or used in concert with formal identification procedures. The Court is extremely hesitant to extend this precedent to new uses without such indicia of reliability.

Here, the Government has not stated when this data sheet was created and has not provided any circumstances surrounding its creation other than that the witness's staff assembled it some undetermined time after the declarant-witness met with Defendant. The Government has not even squarely stated if or when their witness saw the sheet itself. Based on this scarce foundation, the Court cannot at this juncture find that any information contained in the sheet is a statement of identification, let alone find that statement to be connected with the Government's witness's prior meeting with Defendant.

Even if further foundation was provided surrounding the circumstances of the data sheet's creation, both parties agree that some information contained within the data sheet should be redacted and that the provided document is not in a final, admissible form. The Government has not, however, detailed the extent of those redactions, other than to state that they are willing to redact prior convictions, and has not provided a proposed copy of the redacted document to the Court—they have instead simply offered to "discuss further redactions with defense counsel and attempt to reach an agreement." ECF No. 850 at 8 n.5; ECF No. 859 at 7. This leaves the Court to contemplate a range of different possible document configurations for hearsay and prejudice. Given the Court's finding that the document, as currently presented, is not admissible under Fed. R. Evid. 801(d)(1)(C), and the Court's inherent discretion to determine the timing of determinations on the admissibility of contested evidence, *Corrigan v. Glover*, 254 F. Supp. 3d 184, 192 (D.D.C. 2017), the Court declines to opine further on the later potential admissibility of this data sheet at trial, with redactions.

## III. CONCLUSION

The Government, through its motions briefs and the attached exhibits, has not met its burden to establish the admissibility of either its visitation records or its data sheet. This does not mean that the Court today finds neither document admissible at all—the Government remains free to provide the Court with further context surrounding the creation of the visitor logs, and to provide more foundation for and a proposed redacted copy of the data sheet, either at trial or before if time allows. Until that time, however, the Court simply cannot admit the contested documents.

The Government's motion will be denied without prejudice towards refiling. A separate Order consistent with this Memorandum Opinion shall issue this date.

Date: 9-11.26

Royce C. Lamberth
United States District Judge