**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Case No. 10-cr-256 (RCL)** |
| | : | |
| **MOISES HUMBERTO RIVERA-LUNA,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SUPPLEMENT IN SUPPORT OF ITS MOTION IN LIMINE TO ADMIT DOCUMENTS FROM EL SALVADOR**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files Supplement in Support of its Motion in Limine to Admit Documents from El Salvador ("Motion") (Doc. 850). In its Memorandum Opinion denying the Government's Motion without prejudice, the Court found that the "Government has not yet shown that the table of Rivera-Luna's visitation records was compiled in such a routine matter that it did not create a new record and resulting testimonial hearsay." *See* Memorandum Op. (Doc. 869) at 9. The Government believes that additional facts and testimony will alleviate the Court's concern in this regard.

## I. FACTUAL BACKGROUND

The Government first obtained the visitation records for defendant Rivera-Luna along with other documents relating to his aliases and membership in MS-13 pursuant to a "collateral request to the Homeland Security Investigations Assistant Attache in El Salvador." The request was made by the case agent investigating the case here and was approved by his supervisors on October 13, 2011. *See* Exhibit 1 (Collateral Request). The request asked simply for any information relating to Rivera-Luna's criminal history in El Salvador and his affiliation with MS-13. *Id.* at 2. It did

not identify any specific information or record that it was seeking. *Id.*

In response, the government of El Salvador sent the visitation records along with other documents showing defendant Rivera-Luna's aliases, criminal history, and identifying the various prisons where he had been held. The initial response from El Salvador did not bear an apostille, however. As the Government prepared for trial against defendants Noe Machado Erazo and others in June 2013, it asked El Salvador to certify the visitation records with an apostille. (The Government did not ask for the additional documents it received from El Salvador to be certified with an apostille and the Government's Motion is focused only on the visitation records.) El Salvador would not simply place an apostille on the records it sent previously. Instead, the "Centros Penales . . . requested all the information from the jails again." *See* Exhibit 2 (June 21, 2013 email from HSI in El Salvador). El Salvador then sent the visitation records at issue (with an apostille), and they were entered into evidence at the June 2013 trial.

The Government expects that "Juan Diaz" will also provide relevant testimony regarding the visitation records. Mr. Diaz, a former investigator with the National Civil Police of El Salvador, is familiar with the recording of inmate visitors and how El Salvador maintained those records during the relevant period. Indeed, from approximately 2010 to 2020, he served as the liaison between the police's Anti-Gang Crime Center and the penitentiary system in El Salvador. He has reviewed at least 500 visitation records for inmates. While he cannot testify as to the accuracy of the particular visitation records in this case, he will testify that the visitation records appear to be simply printouts from the computer system maintained by the prison system in El Salvador. He is expected to testify that the records in this case appear exactly like the visitation records he routinely reviewed during his career in the normal course of his work. He will testify that the records look the same and do not differ from other records he has seen. Finally, he will

testify that the information is displayed in table format because that is what is produced when the digital record is printed from the computer.

## II. ARGUMENT

In its Memorandum Opinion (Doc. 869), based on the information then before it, the Court was concerned that the visitation records may have been created at the request of the Government. Mem. Op. at 8-9. The Court was concerned that the records were akin to the testimonial affidavit at issue in *United States v. Bustamante*, 687 F.3d 1190 (9th Cir. 2012).[1]

The additional facts presented herein and expected testimony show that the visitation records are distinguishable from the letter at issue in *Bustamante.* The letter at issue in *Bustamante* was a one page, "typewritten document in which [the civil registrar] testifies that he has gone to the birth records . . . , looked up the information on Napolean Bustamante, and *summarized* that information at the request of the U.S. government for purpose of its investigation into Bustamante's citizenship." *Id.* at 1194 (emphasis added). The Ninth Circuit specifically limited its opinion to such *summary* documents, ensuring that the "holding today does not question the general proposition that birth certificates, *and official duplicates of them*, are ordinary public records created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Id.* (emphasis added).

Here, however, El Salvador provided the records in response to a general request for information relating to Rivera-Luna's criminal history in El Salvador and his affiliation with MS-13. *See* Exhibit 1 (Collateral Request) at 2. Moreover, the civil registrar in *Bustamante* created a

[1] The Government notes that D.C. Circuit reached a similar conclusion in *United States v. Smith*, 640 F.3d 358, 363-64 (D.C. Cir. 2011) (introduction of letter from New York clerk stating that an examination of state records showed defendant had been convicted of a felony violated defendant's Sixth Amendment rights).

new "summary" record for purposes of providing evidence against the defendant and did not provide a photocopy or duplicate of the birth certificate itself. *Bustamante*, 687 F.3d at 1192. But in this case, Mr. Diaz will testify that he has reviewed hundreds of visitation records maintained in El Salvador's penitentiary office's computer system. The records at issue appear to him to be simply printouts of records from that system. Accordingly, the official here simply authenticated preexisting non-testimonial records that are routinely maintained in El Salvador pursuant to law and pursuant to activities of the penitentiary system. *See United States v. Puente*, 862 F.2d 1415, 1417-18 (5th Cir. 1987) (admitting print outs from Customs Service computer system that were retrieved shortly before trial when the information was recorded in a routine, non-adversarial setting); *Unites States v. Anekwu*, 695 F.3d 967, 974-975 n. 1 (9th Cir. 2012) (distinguishing *Bustamante* from true copies of public records of incorporation); *see also United States v. Fryberg*, 854 F.3d 1126, 1135 (distinguishing *Bustamante* because the return of service at issue "was not a 'new record' created at the behest of investigators 'for the purpose of providing evidence against' [the] Defendant"). Therefore, after the Court reviews the additional evidence, the visitation records should be admitted at trial. *See* Mem. Op. at 9 (noting that the records would be admitted with additional evidence as to how the records are maintained in El Salvador or evidence showing that the visitation records are simply a printout from existing records); *see also Fryberg*, 854 F.3d at 1136 (noting that the mere possibility a business or public record may be used at trial does not render it testimonial unless its primary purpose is for use at future trial); *United States v. Noira*, 945 F.3d 347, 355-56 (5th Cir. 2019) (same)..

WHEREFORE, for the foregoing reasons, the Government requests that the visitation records be admitted at trial.

JEANINE FERRIS PIRRO

United States Attorney

By: */s/ Nihar Mohanty*
NIHAR R. MOHANTY
D.C. BAR NO. 436-686
Assistant United States Attorney
601 D Street, N.W., Fifth Floor
Washington, D.C. 20530
(202) 252-7700
Nihar.Mohanty@usdoj.gov